IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES B. NUTTER & COMPANY,

    Plaintiff,

      v.

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

    Defendant.

CIVIL ACTION FILE
NO. 1:15-CV-1979-TWT

## OPINION AND ORDER

This is a civil action for torts and breach of contract. It is before the Court on the Defendant Old Republic National Title Insurance Company's ("Old Republic") Motion for Summary Judgment [Doc. 105]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 105] is GRANTED.

### I. Background

The Plaintiff James B. Nutter & Company ("Nutter") is a mortgage lender. The Defendant Old Republic is a title insurance company. Between September 2008 and September 2009, Nutter entered into 11 reverse mortgage loans (the "Loans") with

various borrowers.[1] A reverse mortgage is a new kind of home loan, in which lenders loan money to home owners in exchange for equity in their homes. However, unlike traditional mortgages, the borrowers generally are not required to repay the loan until they cease to use the home as their principal residence.[2] In connection with the Loans, Nutter obtained title insurance through Old Republic's agent, Kiser & Green, LLC ("Kiser & Green").[3]

Old Republic  appointed Kiser & Green as its title agent in 2003 pursuant to a limited agency agreement.[4] That agreement specifically defined the authority of Kiser & Green to act as an agent of Old Republic "for the purpose of signing, countersigning, and issuing" title insurance.[5] Nutter had no communication with Old Republic about the scope of Kiser & Green's authority.[6] Each of the title insurance policies issued by Old Republic through Kiser & Green ensured that Nutter would have good title if it ever needed to foreclose on the property.[7] However, nothing in the

---

[1]     Def.'s Statement of Material Facts ¶ 2.

[2]     Pitzner Dep., Ex. 1, at 77-79.

[3]     Def.'s Br. in Supp. of Mot. for Summ. J., at 6.

[4]     Def.'s Mot. for Summ. J., Ex. 49.

[5]     Id.

[6]     Pitzner Dep., Ex. 1, at 95-96.

[7]     Pl.'s Second Amended Compl., Ex. E.

title insurance agreements ensured that the property was worth a certain value nor that the loan would be repaid.

In its role as Old Republic's title agent, Kiser & Green issued Closing Protection Letters to Nutter for each of the Loans.[8] Each Closing Protection Letter promised to reimburse Nutter for any losses incurred as a result of Kiser & Green's misconduct.[9] However, the losses were only covered if Kiser & Green's misconduct related to (1) the status of title, or (2) the validity, enforceability or priority of the mortgage lien.[10] The Closing Protection Letters also stated that "[Kiser & Green] is [Old Republic's] agent only for the limited purpose of issuing title insurance policies. Neither [Kiser & Green] nor the Approved Attorney is [Old Republic's] agent for the purpose of providing other closing or settlement services."[11] The Closing Protection Letters provided further that Old Republic was not liable for any losses unless written notice was provided to Old Republic within a year of the date of closing.[12]

---

[8]     Def.'s Br. in Supp. of Mot. for Summ. J., at 7.

[9]     Pitzner Dep., Ex. 2, at 11.

[10]    Id.

[11]    Id.

[12]    Id.

Georgia law requires that attorneys oversee the closing of a mortgage.[13] With regard to the Loans at issue here, Kiser & Green acted as the closing attorneys in addition to acting as Old Republic's title agent.[14] Nutter provided Kiser & Green with detailed closing instructions with respect to its role as the closing attorneys.[15] The closing instructions repeatedly referred to Kiser & Green as Nutter's agent.[16] In addition to the closing instructions, the borrowers and Kiser & Green signed an Acknowledgment and Receipt of Settlement Statement for each of the Loans that provided that the parties "acknowledge that the settlement agent was designated to close this transaction by and on behalf of the Lender. Settlement agent does not represent Purchaser/Borrower or any other party (other than Lender) in connection with this transaction."[17] An attorney from Kiser & Green signed each of these statements as the Settlement Agent, and each one designated Nutter as the Lender.[18]

---

[13]    In re UPL Advisory Opinion 2003-2, 277 Ga. 472, 472 (2003).

[14]    Def.'s Br. in Supp. of Mot. for Summ. J., at 5.

[15]    See Pitzner Dep., Ex. 2, at 14.

[16]    Id. (e.g., "As disbursement agent for James B. Nutter and Company...").

[17]    See Pitzner Dep., Ex. 2, at 27. Although the language for each one was slightly different, the effect was the same for all of them.

[18]    Id.

Old Republic's agreement with Kiser & Green stipulated that Kiser & Green agreed to "periodic audits" by Old Republic.[19] Further, Old Republic internally classified each of its agents in a system that included three stages: Minimal, Secondary, and Primary, ranging from least risk to most risk.[20] The frequency of audits varied with each level of risk, from once every three years at the Minimal level, to annually at the Primary level.[21] In March of 2010, Old Republic completed an audit of Kiser & Green and determined that Kiser & Green had failed to follow the Closing Protection Letter instructions in a number of the Loans.[22] As a result, Old Republic changed Kiser & Green's risk classification to Primary, because Kiser & Green had created "significant risk exposure."[23] However, Old Republic's audit did not uncover any question of fraud, just "a lot of sloppy work."[24] Old Republic never told Nutter about its concerns, as it considered the primary purpose of the audits to be identifying risks to Old Republic.[25]

---

[19]   Def.'s Mot. for Summ. J., Ex. 49.

[20]   Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. F, at 4.

[21]   Id.

[22]   Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. H, at 1.

[23]   Id.

[24]   Partin Dep. at 208.

[25]   Id. at 220.

In 2011, the U.S. Department of Housing and Urban Development ("HUD")
and the Federal National Mortgage Association ("Fannie Mae") discovered that a
number of loans they had purchased that had been closed by Kiser & Green were
tainted by fraud.[26] Principals at Kiser & Green had been disguising the source of funds
at closing in a fraudulent scheme to profit from the Loans.[27] Eventually, the leaders
of the scheme pleaded guilty and were convicted of various fraud charges.[28] However,
no problems were ever alleged or discovered with regard to the title status of any of
the properties that were the subject of the Loans.[29]

As a result of the fraud scheme, Fannie Mae required Nutter to repurchase ten
of the Loans at issue.[30] On September 14, 2011, Nutter first wrote to Old Republic

---

[26]     Pitzner Dep., Ex. 2, at 247-248.

[27]     Id.

[28]     Pl.'s Statement of Material Facts ¶¶ 26-27.

[29]     Nutter denies this fact. Pl.'s Resp. to Def.'s Statement of Material Facts
¶¶ 9-11. However, an "issue of fact must be 'genuine'," meaning that Nutter must do
more than "simply show that there is some metaphysical doubt as to the material
facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356
(1986). Nutter cites no evidence other than the remote possibility that something *could*
be wrong with the titles at some point. Therefore, the issue is considered undisputed.

[30]     Pl.'s Statement of Material Facts ¶ 32. The eleventh loan had already
gone into default, and HUD, having insured the loan, had paid Fannie Mae. Nutter
subsequently indemnified HUD.

notifying it of the fraud and of Fannie Mae's demand that it repurchase the Loans.[31] In the written communications, Nutter claimed that it would look to Old Republic to cover its losses with regard to the fraud scheme.[32] Old Republic denied Nutter's claim, which is what led to this lawsuit. Nutter has since foreclosed on four of the Loans without incident, and the remaining seven remain in Nutter's portfolio.[33]

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[34] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[35] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[36] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to

---

[31]   Pitzner Dep., Ex. 2, at 100.

[32]   Pitzner Dep., Ex. 2, at 105.

[33]   Pitzner Dep., Ex. 1, at 72, 82, 107-108.

[34]   FED. R. CIV. P. 56(a).

[35]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[36]   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

show that a genuine issue of material fact does exist.[37] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[38]

### III. Discussion

### A. Breach of Contract Claims

In Count II of its Second Amended Complaint [Doc. 84], Nutter alleges breach of contract for all eleven of the Loans. Nutter alleges that Old Republic failed to cover Nutter's losses stemming from the reverse mortgage fraud scheme, as allegedly promised in the Closing Protection Letters. Old Republic denies this, and moves for summary judgment on the claims.

"Construction of the contract, at the outset, is a question of law for the court."[39] Courts in Georgia undertake a three-step process to interpreting a contract.[40] The first step is "to determine if the instrument's language is clear and unambiguous...[if it is], the court simply enforces the contract according to its terms..."[41] If there is any

---

[37]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[38]    Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[39]    American Empire Surplus Lines Ins. Co. v. Hathaway Development Co., Inc., 288 Ga. 749, 750 (2011).

[40]    Id.

[41]    Id.

ambiguity, then the court moves on to the second step and applies the rules of contract construction to resolve it.[42] And if any ambiguity still remains, only then is the interpretation of the language submitted to a jury.[43]

In this case, the language of the Closing Protection Letters is clear. Although the Closing Protection Letters covered Nutter for any loss "in connection with the closing[s]," they only did so:

> "provided the loss arises out of: (1) Failure of the Issuing Agent to comply with your written closing instructions *to the extent that they relate to (a) the status of the title...or the validity, enforceability and priority of the lien*...or (b) the obtaining of any other document, specifically required by you, but *only to the extent the failure to obtain the other document affects the status of the title*...or (2) Fraud, dishonesty or negligence of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with the closings *to the extent that...[it]...relates to the status of title*..."[44]

The clear and unambiguous message of the Closing Protection Letters is that Old Republic would only cover those losses that actually affected the *status* of title in some way. Old Republic was only insuring against any danger that would lead the Lender to actually lose title to the property. In other words, Old Republic was doing what it says it does: offering *title* insurance.

---

[42]     Woody's Steaks, LLC v. Pastoria, 261 Ga. App. 815, 817 (2003).

[43]     Id.

[44]     Pitzner Dep., Ex. 2, at 11 (emphasis added).

In this case, Nutter has failed to demonstrate any actual cloud of title on the properties. Nutter admits that it "does not at the present time have information as to any specific defect in title," or the enforceability of the mortgages.[45] The only argument Nutter makes is that there remains a possibility that the borrowers could try to rescind the Loans under either the Truth in Lending Act[46] or the Real Estate Settlement Procedures Act.[47] Nutter argues that if the borrowers rescinded the Loans, then there may be an issue of validity, enforceability and priority of the Nutter's mortgages.[48]

However, the "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party."[49] Nutter has already conducted four foreclosures on the Loans, and in none of them have the borrowers claimed any rights under either of the statutes cited by Nutter, nor have they claimed any other defect in title. Further, Nutter has shown no evidence that any of

---

[45]   Pl.'s Response to Def.'s Statement of Material Facts ¶¶ 9-11.

[46]   15 U.S.C. § 1601-1667(f).

[47]   12 U.S.C. §§ 2601-2617; see also Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., at 14.

[48]   Id.

[49]   Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980)).

the remaining borrowers are in a position to claim any rights under either statute. If the borrowers ever tried, in fact, they would almost surely fail. The Truth in Lending Act has a three-year statute of limitations.[50] It has been seven years since the last of the Loans was consummated. And even if a Real Estate Settlement Procedures Act claim could possibly succeed, federal courts across the country have consistently held that rescission is not a remedy under the statute.[51] And the statute itself specifically states that "[n]othing in this chapter shall affect the validity or enforceability of...any loan, loan agreement, mortgage, or lien..."[52] Even considered in the best light, Nutter has failed to forecast anything more than the possibility that at some point far off in the future, there could, perhaps, be a cloud on title. A mere possibility is not enough. The Defendant's motion for summary judgment on the breach of contract claims is granted.[53]

### B. Tort Claims (Counts I, III-V)

---

[50]     15 U.S.C. § 1635(f).

[51]     See, e.g., Brown v. Wilmington Fin., 2012 WL 975541, at *3 n.3 (D. Md. March 21, 2012) ("...RESPA does not provide for rescission.").

[52]     12 U.S.C. § 2615.

[53]     Because Nutter's breach of contract claim fails on the basis of the language of the contract, it is unnecessary to address Old Republic's argument that the claims were time barred by the contract.

In Counts I, III, IV and V of its Second Amended Complaint [Doc. 84], Nutter alleges that Old Republic committed various torts by and through its agent Kiser & Green's actions in closing the Loans. Generally, "the acts of an agent within the scope of his authority are binding on his principal..."[54] However, when an agent is working for two principals that are aware of the dual agency, neither principal can be held liable by the other for the agent's actions unless they participated in the agent's wrong. As the Supreme Court of Georgia has said, "the misconduct of a dual agent by consent cannot be imputed to either of the principals who is not actually at fault, since each of the principals is under an equal duty to exercise ordinary care in selecting and supervising the agent to protect his own interests."[55]

In this case, Nutter does not contend that Old Republic actually participated in the mortgage fraud scheme. And it is clear that Kiser & Green was Nutter's agent in relation to the closings. As noted above, Nutter's closing instructions to Kiser & Green specifically and repeatedly referred to Kiser & Green as its agent, and an attorney from Kiser & Green even signed the instructions as the "settlement agent."[56] In each of the closings, the borrowers signed acknowledgments showing that it was

---

[54]    Burnett v. Lewis, 40 Ga. App. 525 (1929).

[55]    Hodges v. Mayes, 240 Ga. 643, 644 (1978).

[56]    See Pitzner Dep., Ex. 2, at 14.

both parties' understanding that Kiser & Green represented Nutter and not the borrowers.[57] Nutter has not shown or argued anything to the contrary.

"The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him..."[58] It is undisputed in this case that Nutter had authorized Kiser & Green to act on its behalf in the closing transactions. Even assuming Kiser & Green was Old Republic's agent for the purpose of closing the Loans (which Old Republic disputes), Nutter was still "under an equal duty to supervise the agent and to protect his own interest."[59] Because Kiser & Green was the dual agent of both Old Republic and Nutter, there is no need to address Old Republic's other arguments; Nutter's various tort claims must fail. Old Republic's motion for summary judgment on Counts I, III, IV, and V is granted.

## IV. Conclusion

For the reasons stated above, the Defendant Old Republic National Title Insurance Company's Motion for Summary Judgment [Doc. 105] is GRANTED.

---

[57]    See Pitzner Dep., Ex. 2, at 13.

[58]    O.C.G.A. § 10-6-1.

[59]    Hodges, 240 Ga. at 644.

SO ORDERED, this 3 day of October, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge